**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**SPARTANBURG DIVISION**

| | | |
|---|---|---|
| BAIER & MICHELS GMBH & CO. KG; and BAIER & MICHELS USA INC., | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Case No. _____ |
| ENGINEERED INSERTS & SYSTEMS, INC., | § § § | |
| *Defendant*. | § § § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiffs baier & michels GmbH & Co. KG ("Baier Germany") and baier & michels USA Inc. ("Baier USA") (collectively, "Baier" or "Plaintiffs") bring this Complaint for Declaratory Judgment against Defendant Engineered Inserts & Systems, Inc. ("EIS" or "Defendants"), based on EIS's unjustified and unfounded allegations that Baier infringes certain patents. Baier alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for declaratory judgment of patent non-infringement and invalidity pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and the patent laws of the United States, Title 35 of the United States Code. The patents at issue are U.S. Patent No. 10,040,182 ("the '182 patent"), U.S. Patent No. 11,685,029 ("the '029 patent"), U.S. Patent No. 11,878,397 ("the '397 patent"), U.S. Patent No. 12,097,598 ("the '598 patent") and U.S. Patent No. 12,103,147 ("the '147 patent") (collectively, the "Patents-in-Suit," attached as Exhibits 1-5).

2.      Baier requests declaratory judgment relief because EIS has asserted, first in correspondence to Baier, and then in baseless and improper complaints that EIS filed in this Court,

that Baier purportedly infringes the Patents-in-Suit by manufacturing and selling a line of one-piece closing and sealing elements, referred to as the b&m-KL PLUG® ("Accused Products"), which function similarly to blind rivet nuts.

3.     Baier denies that it has infringed any valid claims of the Patents-in-Suit.  The claims of the Patents-in-Suit do not cover any version of the Accused Products or the use or installation thereof.  To the extent that the patents are interpreted otherwise, they are invalid.  Baier intends to commence manufacturing and sales of the Accused Products in the United States, and EIS has put Baier under a cloud of litigation based on meritless accusations.

4.     As of the date of this Complaint, EIS's lawsuit against Baier in this Court on the five Patents-in-Suit (and also on U.S. Patent No. 10,859,105 ("the '105 patent")) in *Engineered Inserts & Systems, Inc. v. baier & michels GmbH & Co. KG and baier & michels USA Inc.*, Civil Action No. 6:24-cv-04453-DCC (DSC), is subject to a pending motion to dismiss pursuant to Fed. R. Civil P. 12(b)(6) for failure to state a claim.  As set forth in Baier's motion, EIS cannot plausibly allege past infringement because, *inter alia*, Baier only manufactures and sells the Accused Products outside the United States, and merely exhibiting a KL-Plug at a Las Vegas trade show does not constitute an infringing "use" under U.S. law.  Accordingly, EIS has not and cannot plead a cognizable claim for damages that would enable it to have disputed facts decided by a jury.  However, EIS's threats through letter correspondence and its meritless attempt to enforce its patents in this Court create a real and justiciable controversy for which Baier is entitled to seek declaratory judgment relief in this Court.

5.     Accordingly, Baier seeks a declaratory judgment that Baier's anticipated manufacture and sales of the KL-Plug in the United States would not directly infringe any valid

claim of the Patents-in-Suit, and that Baier's anticipated actions would not induce infringement or contributorily infringe any valid claim of the Patents-in-Suit.

## THE PARTIES

6.     Plaintiff baier & michels GmbH & Co. KG is organized under the laws of Germany and maintains a principal place of business at Carl-Schneider-Straße 1, 64372 Ober-Ramstadt, Germany.

7.     Plaintiff baier & michels USA Inc. is organized under the laws of State of Delaware and maintains a regular and established place of business at 65 Brookfield Oaks Drive, Greenville, SC 29607.  Baier Germany and Baier USA are related companies.

8.     On information and belief, Defendant Engineered Inserts & Systems, Inc. is a corporation formed under the laws of the State of Connecticut and maintains a principal place of business at 200D Cascade Blvd., Milford, CT 06460.  According to EIS, it owns and has the rights to enforce the Patents-in-Suit.

## JURISDICTION AND VENUE

9.     Baier repeats the allegations in the preceding paragraphs 1-8 as if fully set forth herein.

10.     Baier files this complaint against EIS pursuant to the patent laws of the United States, Title 35 of the United States Code, and the laws authorizing actions for declaratory judgment in the federal courts of the United States, 28 U.S.C. §§ 2201 and 2202.

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338, and 2201-2202, because this Court has exclusive jurisdiction over declaratory judgement claims arising under the patent laws of the United States.

12.     This Court can provide the declaratory relief sought in this Complaint because an actual case and controversy exists between the parties within the scope of this Court's jurisdiction pursuant to 28 U.S.C. § 2201.

13.     As described in this Complaint, the case and controversy between the parties stems from EIS's correspondence accusing Baier of infringing the Patents-in-Suit and threatening that Baier must cease its activities associated with manufacturing and selling the Accused Products. Although Baier offered to meet with EIS and responded to those accusations in good faith, EIS then filed improper complaints in this Court related to its meritless accusations against Baier. EIS's actions have created a real, immediate, and justiciable dispute between Baier and EIS as to whether Baier's product would infringe the Patents-in-Suit if the Accused Products were manufactured, used or sold in the United States, and whether the patents are valid.

14.     This Court has personal jurisdiction over EIS because it has purposefully directed enforcement activities at this forum by sending correspondence to Baier in South Carolina and then filing complaints against Baier in this Court.  Baier's claims arise out of or relate to these enforcement activities by EIS in this District.  EIS has availed itself of the District to create a real, live, immediate, and justiciable case or controversy between EIS and Baier.  In doing so, EIS has established sufficient minimum contacts with the District of South Carolina such that EIS is subject to specific personal jurisdiction in this Action.  Further, the exercise of personal jurisdiction based on these repeated and pertinent contacts does not offend traditional notions of fairness and substantial justice.

15.     Venue is proper in this District under 28 U.S.C. § 1391 and in the Spartanburg division pursuant to L.R. 3.01(A), at least because EIS is subject to personal jurisdiction in this

District as described above, and the claims arise out of or relate to EIS's actions taken in this District and Division.

## FACTUAL BACKGROUND

16.     Baier brings this Action after EIS filed a meritless and improper lawsuit following several rounds of correspondence between the parties, in which EIS failed – except for one of the Patents-in-Suit – to address a basic request as to how EIS believes Baier would allegedly infringe if they were to manufacture and sell Baier's "KL plugs" in the United States.  Despite Baier's repeated invitations to discuss the dispute, and Baier's detailed response on the merits about the one patent for which EIS provided a chart with infringement allegations (as to a single claim), EIS continues to push infringement accusations without adequate explanations to back them up.

17.     The Patents-in-Suit generally pertain to a specific design for sealing plugs for openings in hydraulic manifolds.  Hydraulic manifolds are typically used, for example, in heavy construction equipment, farm equipment, or other large vehicles.

### A.     Summary of the Patents-In-Suit:  Two-Piece Sealing Plugs

18.     Each of the Patents-in-Suit describes that the plugs have two separate components: a "cylindrical sleeve" having a hole through the top and bottom, and a "core" having a tapered outer wall.  (*E.g.*, Ex. 1 at 12.)  These are depicted in Figure 1C (arrow 5 points to the cylindrical sleeve and arrow 3 points to the core).



(*Id.* at 4.)

19.    The patent specifications describe that the inner diameter of the cylindrical sleeve and the outer diameter of the core are sized to enable the top of the core 3 to be "press fit into the lower end of sleeve 5." (*Id.* at 12, col. 3, ll. 46-47.) When the components are press-fit together and inserted into an opening of a manifold, a particular tool is used to bring the core up into the sleeve, causing the core's tapered wall to deform the sleeve and press against the opening to seal it, as shown in Figure 2D.



(*Id.* at 6.)

20.     While the Patents-in-Suit all include a similar technical disclosure, each concludes with claims having specific requirements.  All of the Patents-in-Suit are titled "System and Method for Installing a Manifold Plug" and the alleged invention that is claimed includes an insert or plug having a "core" piece and a "sleeve" piece.

21.     The '182 patent claims "[a] system for sealing a hole" that includes "an installation device," a certain arrangement of various specific components, including a "switch" activated in a certain manner, and the "insert." (Ex. 1 at 14-15, claim 1.)

22.     The '029 patent claims "[a] device containing a sealed hole" that includes a "block" and the "insert."  (Ex. 2 at 15, claims 11 and 17.)

23.     The '397 patent claims "[a] method of sealing an installation hole" that also requires the use of a "block" and/or an "insertion hole" into which the "insert" is installed  (Ex. 3 at 14-15, claims 1 and 11.)

24.     The '598 patent claims a (two-piece) "plug for sealing an installation hole."  (Ex. 4 at 14-15, claim 1.)

25.     Similar to the '182 patent, the '147 patent claims "[a] system for sealing an installation hole" that includes "an installation device" and a certain arrangement of various specific components, including a "switch" activated in a certain manner, and the "insert." (Ex. 5 at 7, claim 1.)

**B.     The Accused Products Are One-Piece Sealing Plugs**

26.     In EIS's correspondence and litigation filings, EIS alleges that Baier has a line of plugs, called the b&m-KL Plugs®.  In its Amended Complaint, EIS quotes from a brochure for the plugs which states that "[t]he b&m-KL PLUG® is a *one-piece* and universally applicable closing and sealing element for holes with and without pressure load."  (Ex. 6 at ¶ 23 (emphasis added).)  This is distinct from the ***two-piece*** plugs of the Patents-in-Suit.  EIS's Amended

Complaint includes pictures of various b&m-KL Plugs, some of which are closed at one end and others are open at both ends.



(Ex. 6 (Amended Complaint) at ¶ 26.)

> **C.     Both Parties Have Relied On The Differences Between One-Piece vs. Two-Piece Designs As An Operative Distinction Over The Patented Plugs.**

27.     Prior to EIS's correspondence, Baier had filed an invalidity challenge to European Patent No. EP 3102867 B1 titled "System And Method For Installing A Manifold Plug," which shares the same priority claim and is a counterpart to the Patents-in-Suit.  Baier asserted that an old Great Britain patent, which disclosed a one-piece plug, was an invalidating reference disclosing what was claimed in EIS's patent.  EIS argued to the European Patent Office that its invention was different from the Great Britain patent's one-piece design because that prior patent's design "is not a press fit connection, rather the sleeve and core are machined as one piece of metal," and so it is "not relevant to the problem and solution the [EIS] patentee is trying to solve."  (Ex. 7, Excerpts from European Opposition Proceeding.)  In making these arguments, EIS specifically disclaimed one-piece inserts from being encompassed by its invention.

28.     After the Opposition proceeding in the European Patent Office concluded, Baier did not have any further communication with EIS concerning its patents until, on April 9, 2024,

EIS's counsel wrote an unsolicited letter to "advise" Baier Germany and Baier USA that "the manufacture, sale, or offer for sale in the United States of baier & michels' (hereafter b&m) b&m-KL PLUG®, and/or products that include such a b&m-KL PLUG®, infringes at least one claim of each of [the '182 patent, the '029 patent, and the '397 patent] owned by Engineered Inserts & Systems, Inc" and demanded that Baier "cease" this purported activity.  (Ex. 8, Letter of April 9, 2024.)  The letter included copies of the three patents but no description as to how the plug or any activity by Baier allegedly infringed any of the three patents.

29.    Baier's counsel responded on April 29, 2024 by requesting "an explanation from your side (*e.g.*, through claim charts) as to how you read the claims identified in your letter against the b&m-KL Plug®."  (Ex. 9, Letter of April 29, 2024.)  The letter further noted that such an explanation "would be useful for understanding EIS's purported bases for its allegations in your letter and may facilitate further discussions between us."  (*Id*.)

30.    On May 6, 2024, EIS's counsel sent a reply letter, this time including a chart comparing the language recited in claim 11 of the '397 patent with pictures copied from a brochure available online for the b&m-KL Plug®.  (Ex. 10, Letter of May 6, 2024.)  But the letter still provided no explanation for any accusations regarding the '182 or '029 patents, asserting instead that the '397 patent is "exemplary" of the parties' patent dispute.

31.    Baier's counsel responded in a letter on May 17, 2024.  (Ex. 11.)  Baier's counsel stated that "[w]e do not agree that b&m's KL PLUG® line would infringe the '397 patent if made, used, sold, offered for sale or imported in or to the United States."  (*Id*. at 1.)  The letter then explained that the claims in the '397 patent, which call for a two-piece design, do not encompass the KL PLUG®'s one-piece design.  Specifically, Baier's counsel noted that "[t]he differences between the EIS claimed design and b&m's design are very substantial; the two companies took

entirely different design approaches, as EIS admitted in the European opposition proceedings." (*Id.*)  The letter also explained that any infringement allegations regarding the other two patents should fare no better, and it stated that EIS's patent claims would be invalid if construed to cover the Accused Products.  Baier's counsel invited EIS's counsel to discuss any issues if the correspondence did not resolve the matter.  (*Id.* at 3.)

32.     On July 18, 2024 (over two months later), EIS's counsel wrote again.  (Ex. 12.) This time, EIS's counsel merely stated that EIS does not agree with Baier's interpretation of the '397 patent and that positions that EIS took in the European opposition proceeding are "irrelevant."  EIS's counsel also said that Baier's interpretation was purportedly not applicable for "many of the other claims in this family," but did not elaborate.  (*Id.*)  EIS did not deny that Baier took an entirely different design approach from the EIS, and that EIS's patent claims would be invalid if construed to cover the Accused Products.

33.     EIS's July 18, 2024 letter also advised Baier that EIS had a fourth patent, the '105 patent.  The letter warned Baier to "be advised that the manufacture, use, sale or offer for sale in the U.S. of at least the volume flow regulation version of the b&m-KL PLUG and/or any products that include such a volume flow regulation" would infringe the '105 patent.  The letter did not identify any activity in the United States involving a "volume flow regulation version of the b&m KL PLUG."

34.     Baier's counsel sent a reply letter on August 14, 2024.  (Ex. 13, Letter of August 14, 2024.)  Regarding the '105 patent, Baier's letter stated that "[w]e are unaware of any b&m plugs in the United States having a calibrated metering orifice" and so "we see no reason to address EIS's assertion of the '105 patent at this point."  (Ex. 13 at 3.)  Baier's letter also reminded EIS that the KL Plugs could not infringe any patents in Plaintiff's portfolio because they are directed

to fundamentally different, one-piece "break-away designs," which is the type of construction that EIS's inventors sought to avoid when they decided upon a two-piece design for their plug. Baier also pointed to additional disclosure in the Great Britain prior art patent to show that EIS's patents are either not infringed or are otherwise invalid based on prior disclosures.

35.     Later that day, EIS filed a Complaint alleging infringement of all four patents and asserting that the infringement is continuing and willful.

**D.     Baier Moves To Dismiss EIS's Complaint and Amended Complaint**

36.     EIS's Complaint filed on August 14, 2024, contained four counts, alleging direct infringement of the '182 patent, the '105 patent, the '029 patent, and the '397 patent, respectively, under 35 U.S.C. § 271(a). On November 1, 2024, Baier filed a motion to dismiss all counts of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

37.     On November 22, 2024, EIS filed an Amended Complaint, which continued to allege infringement of the four patents from the Complaint, and further alleged direct infringement of the '598 patent and the '147 patent. (Ex. 6.) On December 13, 2024, Baier filed a motion to dismiss all counts of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In the motion to dismiss EIS's Amended Complaint, Baier noted its intention to file this Complaint for a declaratory judgment in this Court that the manufacture and sale of KL-PLUGs in the United States will not infringe any valid patent that EIS is threatening.

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**
**OF THE '182 PATENT**

38.     Baier repeats and realleges each and every allegation contained in paragraphs 1-37 of this Complaint as if fully set forth herein.

39.     In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Baier and EIS regarding infringement and validity of the '182 patent.

40.     The '182 patent is titled "System and Method For Installing A Manifold Plug."  In correspondence and in EIS's lawsuit, it asserts that Baier is infringing at least claim 1 of the patent, which reads as follows:

> 1.     A system for sealing a hole having a first diameter comprising:
>
> an installation device having a drive;
> an end piece coupled to said installation device and including a bore and a distal surface wherein a dimension of said distal surface is larger than a dimension of the hole;
> a pull-rod coupled to said drive and passing through said bore, the pull-rod having a threaded end;
> an insert including a cylindrical sleeve and a core, the cylindrical sleeve being metallic and having a through hole with the core positioned in the through hole, the core having a threaded hole at a first end and a tapered outer wall, wherein a maximum outer diameter of said insert is equal to or less than the first diameter and a depth of the threaded hole is less than a height of the core a second end of said core having an outer diameter larger than the inner diameter;
> a switch coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch;
> wherein activation of said switch causes said rotation drive to rotate said pull-rod; and
> said pull-rod threadable into the threaded hole and said pull-rod retractable by said drive to pull the core into the cylindrical sleeve thereby radially expanding the cylindrical sleeve against the hole wherein the installation device and insert are configured such that after retraction of said pull-rod to pull the core into the cylindrical sleeve, said installation device is configured to rotate said pull-rod and release the threaded end from the threaded hole of the core.

41.     Baier's anticipated manufacture and sale of the Accused Products in the United States would not directly infringe claim 1 of the '182 patent under 35 U.S.C. § 271(a) because the claim does not cover a b&m-KL PLUG®.

42.     First, claim 1 of the '182 patent is on a system, but a KL Plug is just an insert plug and not a system.  More particularly, the patent claims a "system for sealing a hole" that has several

interconnected elements, including: (i) "an installation device having a drive"; (ii) "an end piece coupled to said installation device"; (iii) "a pull-rod coupled to said drive"; (iv) "an insert including a cylindrical sleeve and a core"; and (v) "a switch coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch."  (Ex. 1 at 14-15.)  In comparison, a b&m-KL Plug is just a one-piece insert.  The insert is not an installation tool and is not  "an installation device having a drive," a "pull-rod," "end-piece," or "switch."

43.     Second, the b&m-KL PLUG® is not "an insert including a cylindrical sleeve and a core" where "the cylindrical sleeve … [has] a through hole with the core positioned in the through hole."  The claimed insert requires two separate pieces prior to installation, namely, a "core" piece that is "positioned" relative to a "cylindrical sleeve" piece, and does not cover the KL-Plug, which is a one-piece insert.  For at least this reason, claim 1 does not apply to the KL-Plug or its anticipated use.

44.     The remaining claims in the '182 patent are dependent from claim 1, and also cannot be infringed at least for the reasons stated above.

45.     Baier's anticipated sales activity in the United States of a KL-Plug also would not induce infringement under 35 U.S.C. § 271(b) because the claimed system does not cover the KL-Plug and also because Baier's anticipated sales activity would not aid or abet a customer to make a KL-Plug a component of the claimed system.

46.     Claim 1 recites a system having "a switch coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch."  The KL-Plug can be installed using tools that do not activate a switch by axial pressure.  For example, the photos from a trade show that are included in EIS's Amended Complaint depict a conventional rivet setting tool, which does not activate a switch by axial pressure.  Accordingly, if Baier were to suggest or

recommend that customers utilize the type of tool depicted in the trade show photos for installation of a KL-Plug, that would not aid or abet a customer to directly infringe because the depicted tool is not configured according to what is recited in the claimed system.

47.     Baier's anticipated sales in the United States of the Accused Products also would not constitute contributory infringement under 35 U.S.C. § 271(c) because the KL-Plug is not especially made or especially adapted for use in an infringement of the '182 patent, and it is suitable for substantial non-infringing uses.  Again, the KL-Plug is a one-piece insert that can be installed using a tool that does not activate a switch by axial pressure, and it is not especially made or adapted for use with the "switch" recited in the claimed system.

48.     Alternatively, to the extent that claim 1 of the '182 patent is interpreted in a manner so as to cover a one-piece insert and a tool having a conventional limit switch, then at least claim 1 is invalid.

49.     First, under such an interpretation, claim 1 is invalid for lacking written  description and enablement under 35 U.S.C. § 112(a).  The '182 patent does not disclose a one-piece insert as an embodiment of the invention.  To the contrary, the '182 patent specification expressly criticizes and distinguishes such a structure because it requires a "break off" that is "complicated and expensive" and is a problem to be solved.  Accordingly, under any such interpretation, claim 1 is invalid for lacking written description and enablement under 35 U.S.C. § 112(a).

50.     The remaining claims in the '182 patent are dependent from claim 1, and also are invalid under such an interpretation for lacking written description and enablement to the extent they are asserted to encompass one-piece designs.

51.     Additionally, under such an interpretation, at least claim 1 of the '182 patent is invalid based upon prior disclosures and the knowledge of a person of ordinary skill in the art.

The '182 patent was filed October 10, 2014 and claims priority to Provisional Application No. 61/929,746 filed January 21, 2014.

52.    First, according to the rationale evident from EIS's infringement accusations, the "insert" recited in claim 1 was already known and disclosed in the prior art.

53.    For example, Great Britain patent GB 1,294,067 titled "Anchor" and issued October 25, 1972 ("GB '067"), discloses a one piece insert that is designed so as to be frangible during installation.  (Ex. 14.)  In the parties' European Opposition proceeding, EIS referred to the arrangement in GB '067 as having a "sleeve" and "core" – the same terminology recited in claim 1 of the '182 patent.



54.    In connection with Figure 5 of GB '067, the patent specification explains that "[t]he embodiment of Figure 5 differs from that of Figure 1 only in the provision of a closure wall 50 at the wider end of the base 10. The closure wall 50 serves to seal the anchor and make the fitting watertight."  Accordingly, GB '067 discloses a sealing insert.



FIG. 5

55.    In the European Opposition proceeding, EIS expressly distinguished its invention from the "one-piece" insert described and depicted in GB '067, but if the "insert" recited in the '182 patent claims were construed such that they would cover Baier's one-piece KL-Plug, then such an "insert" was already known in the art and disclosed, for example, in GB '067.

56.    European Patent EP 0080558, titled "Threaded Insert" and issued August 11, 1982 ("EP '558"), provides another example of a threaded one-piece insert in which a frangible seam is broken during installation.  (Ex. 15.)  The external profile of the bottom portion of the insert in EP '558 (shown below on the left) is similar to that in the accused KL-Plug (shown below on the right), illustrating that such insert designs were known in the art well before the '182 patent.



(EP '558, Figure 1 (left); https://www.baier-michels.com/products/closing-and-sealing-systems/bm-kl-plug/ (right).)

57. Second, according to the apparent interpretation used in EIS's infringement accusations, the "installation device" recited in claim 1 also was known in the prior art.

58. In EIS's Amended Complaint, EIS relies on a photo from a trade show for its assertion that Baier used an installation tool having the components recited in claim 1 of the '182 patent. But the tool in the photo is a blind rivet nut setting tool that was designed well before the '182 patent. Indeed, Figure 1 of U.S. Patent No. 5,605,070 titled "Blind Rivet Nut Setting Device," issued February 25, 1997 (the '070 patent), corresponds to the tool in the photo. (Ex. 16.)



59. EIS's allegations in its Amended Complaint ignored the claimed requirement that the tool uses axial pressure to cause a pull rod to screw into a work piece. But this feature was also well known and was disclosed, for example, in International Patent Application (under the Patent Cooperation Treaty) Number PCT/IB98/01148, titled "Pneumatic-Hydraulic Rivet Gun" and published as Publication Number WO 99/04917 on February 4, 1999 ("WO '917"). (Ex. 17.) WO '917 discloses all components of the installation device recited in claim 1, including "a switch

coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch."

60.     At the time of the alleged invention in the '182 patent, it would have been obvious to a person of ordinary skill in the art to utilize installation tools having features such as those disclosed in the '070 patent and WO '917, taken alone or in combination, for installing an insert configured as disclosed in GB '067 and EP '558, taken alone or in combination, because the axial rotation of the drive in engagement with the internally threaded part of the pull rod would provide appropriate force to break apart the insert for installation.

61.     Accordingly, under the apparent interpretation that EIS employs to accuse Baier of infringement, claim 1 of the '182 patent would be invalid as obvious pursuant to 35 U.S.C. § 103.

62.     The remaining claims in the '182 patent are dependent from claim 1, and also would be invalid as being obvious for substantially the same reasons as for claim 1 and to the extent they are asserted to encompass one-piece designs.

## COUNT II
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '029 PATENT

63.     Baier repeats and realleges each and every allegation contained in paragraphs 1-62 of this Complaint as if fully set forth herein.

64.     In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Baier and ESI regarding infringement and validity of the '029 patent.

65.     The '029 patent is titled "System and Method For Installing A Manifold Plug."  In correspondence and in EIS's lawsuit, it asserts that Baier is infringing at least claim 11 and 17 of the patent, which read as follows:

11.     A device containing a sealed hole comprising:

a block having an outer surface with a cylindrical hole therein;

an insert, the insert comprising: a core having a height and an outer wall having a tapered section and a cylindrical section; a threaded hole located in a first end of said core, a depth of said threaded hole less than the height; a metallic sleeve having a through hole and a cylindrical outer surface and a maximum diameter of the metallic sleeve is less than or equal to a diameter of the cylindrical hole;

the insert installed in and seals the cylindrical hole such that the core is in a position retracted into the sleeve with the threaded hole facing outwards and accessible from outside the block wherein the core exerts outward pressure on an inner surface of the metallic sleeve to force the cylindrical outer surface to seal against the cylindrical hole, wherein the core retracted into the sleeve create a seal which seals the through hole of the metallic sleeve.

17.     A device containing a sealed hole comprising:

a block having an outer surface with a cylindrical hole therein;

an insert, the insert comprising: a core having a height and a tapered outer wall; a threaded hole located in a first end of said core, a depth of said threaded hole less than the height; a metallic sleeve having a through hole and a cylindrical outer surface;

the insert installed in and seals the cylindrical hole such that the core is in a position retracted into the sleeve with the threaded hole facing outwards and accessible from outside the hole wherein the core exerts outward pressure on an inner surface of the metallic sleeve to force the cylindrical outer surface to seal against the cylindrical hole, wherein the core retracted into the sleeve create a seal which seals the through hole of the metallic sleeve;

wherein the first end of the metallic sleeve is located below the outer surface of the cylindrical hole and within the cylindrical hole and the second end of the metallic sleeve is located below the outer surface of the cylindrical hole;

wherein the cylindrical hole is sealed with the threaded hole free from engagement with a male threaded device after installation of the insert in the cylindrical hole

66.     Baier's anticipated manufacture and sale of the Accused Products in the United States would not directly infringe claims 11 and 17 of the '182 patent under 35 U.S.C. § 271(a) because the claims do not cover a b&m-KL PLUG®.

67.     First, claims 11 and 17 recite "[a] device containing a sealed hole" that includes "a block" and "an insert." (Ex. 2 at 15.) A KL Plug is an "insert" but is not a "block," and EIS cannot plausibly allege that a KL Plug itself directly infringes the '029 patent.

68.     Second, the b&m-KL PLUG® is not an insert comprising a "core" and a "cylindrical sleeve" having "a through hole."  The claimed insert requires two separate pieces, namely, a "core" piece and a "cylindrical sleeve" piece, and does not cover the KL-Plug, which is a one-piece insert.  For at least this reason, claim 1 does not apply to the KL-Plug or its anticipated use.

69.     The remaining claims in the '029 patent are dependent from claim 1, and also cannot be infringed at least for the reasons stated above.

70.     Baier's anticipated sales activity in the United States of a KL-Plug also would not induce infringement under 35 U.S.C. § 271(b) because the claimed device does not cover the KL-Plug and also because Baier's anticipated sales activity would not  aid or abet  a customer to make the claimed device..

71.     Baier's anticipated sales in the United States of the Accused Products also would not constitute contributory infringement under 35 U.S.C. § 271(c) because Baier does not sell a two-piece plug as recited in the claims.

72.     Alternatively, to the extent that claims 11 and 17 of the '029 patent are interpreted in a manner so as to cover a one-piece insert, the claims are invalid.

73.     First, under such an interpretation, claims 11 and 17 are invalid for lacking written description and enablement under 35 U.S.C. § 112(a).  The '029 patent does not disclose a one-piece insert as an embodiment of the invention.  To the contrary, the '029 patent specification expressly criticizes and distinguishes such a structure because it requires a "break off" that is "complicated and expensive" and is a problem that was to be solved by the claimed invention.  Accordingly, under any such interpretation, claims 11 and 17 are invalid for lacking written description and enablement under 35 U.S.C. 112(a).

74.    The claims in the '029 patent that are dependent from claims 11 and 17 also are invalid under such an interpretation for lacking written description to the extent they are asserted to encompass one-piece designs.

75.    Additionally, under such an interpretation, claims 11 and 17 of the '029 patent are invalid based upon prior disclosures and the knowledge of a person of ordinary skill in the art. The '029 patent claims priority to Provisional Application No. 61/929,746 filed January 21, 2014.

76.    According to the rationale evident from EIS's infringement accusations, the "device containing a sealed hole" recited in the claims was already disclosed in the prior art.

77.    For example, Great Britain patent GB 1,294,067 titled "Anchor," issued October 25, 1972 ("GB '067) discloses a one piece sealing insert that is designed so as to be frangible during installation.  (Ex. 14.)  In the parties' European Opposition proceeding, EIS referred to the arrangement in GB '067 as having a "sleeve" and "core" – the same terminology recited in claims 11 and 17 of the '029 patent.



78.    In connection with Figure 5 of GB '067, the patent specification explains that "[t]he embodiment of Figure 5 differs from that of Figure 1 only in the provision of a closure wall 50 at the wider end of the base 10. The closure wall 50 serves to seal the anchor and make the fitting watertight."  Accordingly, GB '067 discloses an insert that seals a hole in a block of a device.



FIG. 5

79.     In the European Opposition proceeding, EIS expressly distinguished its invention from the "one-piece" insert described and depicted in GB '067, but if the "insert" recited in the '029 patent claims were construed such that they would cover Baier's one-piece KL-Plug, as EIS alleges in correspondence and in EIS's Amended Complaint, then such an "insert" was already known in the art and disclosed, for example, in GB '067.

80.     European Patent EP 0080558, titled "Threaded Insert" and issued August 11, 1982 ("EP '558"), provides another example of a threaded one-piece insert in which a frangible seam is broken during installation.  (Ex. 15.)  The external profile of the insert in EP '558 (shown below on the left) is similar to that in the accused KL-Plug (shown below on the right), illustrating that such insert designs were known in the art well before the '029 patent.



(EP '558, Figure 1; https://www.baier-michels.com/products/closing-and-sealing-systems/bm-kl-plug/.)

81.     Under the apparent interpretation that EIS employs to accuse Baier of infringement, claims 11 and 17 of the '029 patent would be invalid as anticipated pursuant to 35 U.S.C. § 102(b) or otherwise obvious pursuant to 35 U.S.C. § 103.

82.     The claims in the '029 patent that are dependent from claims 11 or 17 also would be invalid as anticipated or obvious for substantially the same reasons and to the extent they are asserted to encompass one-piece designs.

**COUNT III**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**
**OF THE '397 PATENT**

83.     Baier repeats and realleges each and every allegation contained in paragraphs 1-82 of this Complaint as if fully set forth herein.

84.     In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Baier and ESI regarding infringement and validity of the '397 patent.

85.     The '397 patent is titled "System and Method For Installing A Manifold Plug."  In correspondence and in EIS's lawsuit, EIS asserts that Baier is infringing at least claims 1 and 11 of the patent, which read as follows:

> 1. A method of sealing an installation hole comprising:
> providing an insert which is a sealing insert, the insert comprising:
> a core having a height and a tapered outer wall;
> a threaded hole located in said core, a depth of said threaded hole less than the height;
> the cylindrical metallic sleeve secured to the core in a position prior to engagement of a male threaded device and prior to the core being retracted into the cylindrical metallic sleeve wherein the cylindrical metallic sleeve is secured to the core with a first end of the core secured to the cylindrical metallic sleeve, the cylindrical metallic sleeve having a second height and a hole defining an inner diameter wherein a maximum diameter of said cylindrical metallic sleeve is less than or equal to a diameter of the installation hole;
> a second end of said core having an outer diameter larger than the inner diameter of said hole;
> placing the insert in the installation hole which is a cylindrical hole;
> pulling said core into said cylindrical metallic sleeve with a male threaded device which is threaded into the threaded hole, the pulling sealing the installation hole wherein, said core exerts an outward force on an inner surface of said cylindrical metallic sleeve to radially expand said cylindrical metallic sleeve;
> wherein the insert is installed in the cylindrical hole such that the core is in a position retracted into the sleeve with the threaded hole facing outwards and such that the core exerts outward pressure on an inner surface of the metallic sleeve to force the cylindrical outer surface against the cylindrical hole, wherein the core retracted into the sleeve and seals the hole of the metallic sleeve.

> 11. A method of sealing a hole comprising:
> providing a block having an outer surface with a cylindrical hole therein;
> providing an insert, the insert comprising: a core having a height and a tapered outer wall; a threaded hole located in said core, a depth of said threaded hole less than the height; a metallic sleeve having a hole and a cylindrical outer surface, said core held to the metallic sleeve such that a first end of the core and the sleeve are held together prior to a male threaded device engaging the threaded hole;
> installing the insert in the cylindrical hole to seal the cylindrical hole such that the core is in a position retracted into the sleeve with the threaded hole facing outwards and accessible from outside the hole wherein the core exerts outward pressure on an inner surface of the metallic sleeve to force the cylindrical outer surface to seal against the cylindrical hole, wherein the core

retracted into the sleeve by engagement of a male threaded device which pulls the core into the sleeve to seal the cylindrical hole;

wherein the cylindrical hole is sealed with the threaded hole free from engagement with a male threaded device after installation of the insert in the cylindrical hole.

86. Baier's anticipated manufacture and sale of the Accused Products in the United States would not directly infringe claims 1 and 11 of the '397 patent under 35 U.S.C. § 271(a) because the claims do not cover a b&m-KL PLUG®.

87. First, claims 1 and 11 recite a method of sealing a hole. These claims do not apply to the manufacture or sale of a KL Plug itself. Accordingly, Baier would not directly infringe the '397 patent by making and selling the KL Plug.

88. Second, the b&m-KL PLUG® is not an insert comprising a "core" and a "cylindrical sleeve" where the sleeve is "secured to the core in a position" as recited in claim 1, or the two pieces are "held together" are recited in claim 11. For both claims, the claimed insert requires two separate pieces, namely, a "core" piece and a "cylindrical sleeve" piece, and does not cover the KL-Plug, which is a one-piece insert. For at least this reason, clams 1 and 11 do  not apply to the KL-Plug or its anticipated use.

89. The claims in the '397 patent that are dependent from claims 1 or 11 also cannot be infringed at least for the reasons stated above.

90. Baier's anticipated sales activity in the United States of a KL-Plug also would not induce infringement under 35 U.S.C. § 271(b) because the claimed method does not apply to the KL-Plug and also because Baier's anticipated sales activity would not aid or abet a customer to use the claimed method.

91. Baier's anticipated sales in the United States of the Accused Products also would not constitute contributory infringement under 35 U.S.C. § 271(c) because Baier does not sell a two-piece plug as recited in the claims.

92.     Alternatively, to the extent that claims 1 and 11 of the '397 patent are interpreted in a manner so as to cover a one-piece insert, the claims are invalid.

93.     First, under such an interpretation, claims 1 and 11 are invalid for lacking written description and enablement under 35 U.S.C. § 112(a).  The '397 patent does not disclose a one-piece insert as an embodiment of the invention.  To the contrary, the '397 patent specification expressly criticizes and distinguishes such a structure because it requires a "break off" that is "complicated and expensive" and is a problem to be solved by the claimed invention.  Accordingly, under any such interpretation, claims 1 and 11 are invalid for lacking written description and enablement under 35 U.S.C. 112(a).

94.     The claims in the '397 patent that are dependent from claims 1 and 11 also would be invalid for lacking written description and enablement to the extent they are asserted to encompass one-piece designs.

95.     Additionally, under such an interpretation, claims 1 and 11 of the '397 patent are invalid based upon prior disclosures and the knowledge of a person of ordinary skill in the art. The '397 patent claims priority to Provisional Application No. 61/929,746 filed January 21, 2014.

96.     According to the rationale evident from EIS's infringement accusations, the "method for sealing a hole" recited in claims 1 and 11 was already disclosed in the prior art.

97.     For example, Great Britain patent GB 1,294,067 titled "Anchor," issued October 25, 1972 ("GB '067) discloses a one piece insert that is designed so as to be frangible during installation.  (Ex. 14.)  In the parties' European Opposition proceeding, EIS referred to the arrangement in GB '067 as having a "sleeve" and "core" – the same terminology recited in claims 1 and 11 of the '397 patent.



98.    In connection with Figure 5 of GB '067, and the patent specification explains that "[t]he embodiment of Figure 5 differs from that of Figure 1 only in the provision of a closure wall 50 at the wider end of the base 10. The closure wall 50 serves to seal the anchor and make the fitting watertight."  Accordingly, GB '067 discloses a method for sealing a hole.



99.    In the European Opposition proceeding, EIS expressly distinguished its invention from the "one-piece" insert described and depicted in GB '067, but if the "insert" recited in the '397 patent claims were construed such that they would cover Baier's one-piece KL-Plug, as EIS alleges in correspondence and in EIS's Amended Complaint, then such an "insert" was already known in the art and disclosed, for example, in GB '067.

100.    European Patent EP 0080558, titled "Threaded Insert" and issued August 11, 1982 ("EP '558"), provides another example of a threaded one-piece insert in which a frangible seam is

broken during installation. (Ex. 15.) The external profile of the insert in EP '558 (shown below

on the left) is similar to that in the accused KL-Plug (shown below on the right), illustrating that

such insert designs were known in the art well before the '397 patent.



(EP '558, Figure 1; https://www.baier-michels.com/products/closing-and-sealing-systems/bm-kl-
plug/.)

101.     Under the apparent interpretation that EIS employs to accuse Baier of infringement,

claims 11 and 17 of the '029 patent would be invalid as anticipated pursuant to 35 U.S.C. § 102(b)

or otherwise obvious pursuant to 35 U.S.C. § 103.

102.     The claims in the '029 patent are dependent from claims 11 or 17 also would be

invalid as anticipated or obvious for substantially the same reasons and to the extent they are

asserted to encompass one-piece designs.

**COUNT IV**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY**
**OF THE '598 PATENT**

103.     Baier repeats and realleges each and every allegation contained in paragraphs 1-

102 of this Complaint as if fully set forth herein.

-28-

104.    In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Baier and ESI regarding infringement and validity of the '598 patent.

105.    The '598 patent is titled "System and Method For Installing A Manifold Plug."  In EIS's lawsuit, EIS asserts that Baier is infringing at least claim 1 of the patent, which reads as follows:

> 1. A plug for sealing an installation hole, the plug comprising:
> a core having a height and an outer wall that includes a tapered section and a cylindrical section, the core having a core hole extending at least partially therethrough, at least a portion of the core hole being threaded, the core configured to be inserted into the installation hole with the threaded portion of the core hole being accessible from outside the installation hole, a depth of the core hole being less than the height of the core; and
> a metallic sleeve having an inner surface defining a cylindrical void and having an outer surface, a maximum diameter of the metallic sleeve being less than or equal to a diameter of the installation hole,
> wherein, when the core is retracted in a direction towards the outside of the installation hole, both the tapered and the cylindrical sections of the core are pulled into the cylindrical void of the metallic sleeve whereby the outer wall of the core exerts an outward force on the metallic sleeve to thereby seal the plug within the installation hole.

106.    Baier's anticipated manufacture and sale of the Accused Products in the United States would not directly infringe claim 1 of the '598 patent under 35 U.S.C. § 271(a) because the claim does not cover a b&m-KL PLUG®.

107.    Claim 1 recites a plug having a "core" piece and a separate "sleeve" piece..  The KL-Plug is a one-piece insert and is not covered by claim 1.  For at least this reason, claim 1 does not apply to the KL-Plug.

108.    The claims in the '598 patent that are dependent from claim 1 also cannot be infringed at least for the reason stated above and to the extent they are asserted to cover one-piece designs.

109.    Baier's anticipated sales activity in the United States of a KL-Plug also would not induce infringement under 35 U.S.C. § 271(b) because a customer's use of the KL-Plug would not infringe claim 1.

110.    Baier's anticipated sales in the United States of the Accused Products also would not constitute contributory infringement under 35 U.S.C. § 271(c) because Baier does not sell a two-piece plug as recited in the claims.

111.    Alternatively, to the extent that claim 1 of the '598 patent is interpreted in a manner so as to cover a one-piece insert, the claim is invalid.

112.    First, under such an interpretation, claim 1 is invalid for lacking written description and enablement under 35 U.S.C. § 112(a).  The '598 patent does not disclose a one-piece insert as an embodiment of the invention.  To the contrary, the '598 patent specification expressly distinguishes such a structure because it requires a "break off" that is "complicated and expensive" and is a problem to be solved.  Accordingly, under any such interpretation, claim 1 is invalid for lacking written description and enablement under 35 U.S.C. 112(a).

113.    The claims in the '598 patent that are dependent from claim 1 also would be invalid for lacking written description and enablement to the extent they are asserted to encompass one-piece designs.

114.    Additionally, under such an interpretation, claim 1 of the '598 patent is invalid based upon prior disclosures and the knowledge of a person of ordinary skill in the art.  The '598 patent claim priority to Provisional Application No. 61/929,746 filed January 21, 2014.

115.    According to the rationale evident from EIS's infringement accusations, the "plug for sealing an installation hole" recited in claim 1 was already disclosed in the prior art.

116.     For example, Great Britain patent GB 1,294,067 titled "Anchor," issued October 25, 1972 ("GB '067) discloses in Figure 1 a one piece insert that is designed so as to be frangible during installation. (Ex. 14.)  In the parties' European Opposition proceeding, EIS referred to such an arrangement in GB '067 as having a "sleeve" and "core" – the same terminology recited in claim 1 of the '598 patent.



117.     Referring to Figure 5 of GB '067, the patent specification explains that "[t]he embodiment of Figure 5 differs from that of Figure 1 only in the provision of a closure wall 50 at the wider end of the base 10. The closure wall 50 serves to seal the anchor and make the fitting watertight."  Accordingly, GB '067 discloses a method for sealing an installation hole.



118.     In the European Opposition proceeding, EIS expressly distinguished its invention from the "one-piece" insert described and depicted in GB '067, but if the "insert" recited in

the '598 patent claims was construed such that they would cover Baier's one-piece KL-Plug, as

EIS alleges in correspondence and in EIS's Amended Complaint, then such an "insert" was already

known in the art and disclosed, for example, in GB '067.

119.    European Patent EP 0080558, titled "Threaded Insert" and issued August 11, 1982

("EP '558"), provides another example of a threaded one-piece insert in which a frangible seam is

broken during installation.  (Ex. 15.)  The external profile of the insert in EP '558 (shown below

on the left) is similar to that in the accused KL-Plug (shown below on the right), illustrating that

such insert designs were known in the art well before the '598 patent.



(EP '558, Figure 1; https://www.baier-michels.com/products/closing-and-sealing-systems/bm-kl-plug/.)

120.    Under the apparent interpretation that EIS employed to accuse Baier of

infringement, claim 1 of the '598 patent would be invalid as anticipated pursuant to 35 U.S.C. §

102(b) or otherwise obvious pursuant to 35 U.S.C. § 103.

121.    The claims in the '598 patent that are dependent from claim 1 also would be invalid as anticipated or obvious for substantially the same reasons and to the extent they are asserted to encompass one-piece designs..

## COUNT V
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY OF THE '147 PATENT

122.    Baier repeats and realleges each and every allegation contained in paragraphs 1-121 of this Complaint as if fully set forth herein.

123.    In view of the facts and allegations set forth above, there is an actual, justiciable, substantial, and immediate controversy between Baier and ESI regarding infringement and validity of the '147 patent.

124.    The '147 patent is titled "System and Method For Installing A Manifold Plug."  In EIS's lawsuit, EIS asserts that Baier is infringing at least claim 1 of the patent, which reads as follows:

> 1. A system for sealing an installation hole having a first diameter comprising:
> an installation device having a drive;
> an end piece coupled to said installation device and including a bore and a distal surface wherein a dimension of said distal surface is larger than a dimension of the installation hole;
> a pull-rod coupled to said drive and passing through said bore, the pull-rod having a threaded end;
> an insert including a sleeve having a cylindrical portion and the insert also including a core, the sleeve being metallic and having a hole with the core positionable in the hole, the core having a threaded hole at a first end and a tapered outer wall, wherein a maximum outer diameter of the cylindrical portion of the sleeve is equal to or less than the first diameter and a depth of the threaded hole is less than a height of the core, a second end of said core having an outer diameter larger than the inner diameter;
> a switch coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch;
> wherein activation of said switch causes said rotation drive to rotate said pull-rod; and

said pull-rod threadable into the threaded hole and said pull-rod retractable by said drive to pull the core into the cylindrical sleeve thereby radially expanding the sleeve against the installation hole,

wherein the installation device and insert are configured such that after retraction of said pull-rod to pull the core into the cylindrical sleeve, said installation device is configured to rotate said pull-rod and release the threaded end from the threaded hole of the core.

125.    Baier's anticipated manufacture and sale of the Accused Products in the United States would not directly infringe claim 1 of the '598 patent under 35 U.S.C. § 271(a) because the claims do not cover a b&m-KL PLUG®.

126.    First, claim 1 of the '147 patent is on a system, but a KL Plug is just an insert plug and not a system.  More particularly, the patent claims a "system for sealing an installation hole" that has several interconnected elements, including: (i) "an installation device having a drive"; (ii) "an end piece coupled to said installation device"; (iii) "a pull-rod coupled to said drive"; (iv) "an insert including a cylindrical sleeve and a core"; and (v) "a switch coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch."   In comparison, a b&m-KL Plug is just a one-piece insert.  The insert is not an installation tool and is not "an installation device having a "drive," a "pull-rod," "end-piece," or "switch."

127.    Second, the b&m-KL PLUG® is not "an insert including a cylindrical sleeve and a core" where "the cylindrical sleeve … [has] a through hole with the core positioned in the through hole."  The claimed insert requires two separate pieces, namely, a "core" piece that is "positioned" relative to a "cylindrical sleeve" piece, and does not cover the KL-Plug, which is a one-piece insert.  For at least this reason, claim 1 does not apply to the KL-Plug or its anticipated use.

128.    The remaining claims in the '147 patent are dependent from claim 1, and also cannot be infringed at least for the reasons stated above.

129.    Baier's anticipated sales activity in the United States of a KL-Plug also would not induce infringement under 35 U.S.C. § 271(b) because the claimed system does not cover the KL-Plug and also, because Baier's anticipated sales activity would not aid or abet a customer to make a KL-Plug a component of the claimed system.

130.    Claim 1 recites a system having "a switch coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch."  The KL-Plug can be installed using a tool that does not activate a switch by axial pressure.  For example, the photos from a trade show that are included in EIS's Amended Complaint depict a tool that does not activate a switch by axial pressure.  Accordingly, if Baier were to suggest or recommend that customers utilize the type of tool depicted in the trade show photos for installation of a KL-Plug, that would not aid or abet a customer to directly infringe because the depicted tool is not configured as recited in the claimed system.

131.    Baier's anticipated sales in the United States of the Accused Products also would not constitute contributory infringement under 35 U.S.C. § 271(c) because the KL-Plug is not especially made or especially adapted for use in an infringement of the '147 patent, and it is suitable for substantial non-infringing uses.  Again, the KL-Plug can be installed using a tool that does not activate a switch by axial pressure, and the KL-Plug is not especially made or adapted for use with the "switch" recited in the claimed system.

132.    Alternatively, to the extent that claim 1 of the '147 patent is interpreted in a manner so as to cover a one-piece insert and a conventional installation tool, the claim is invalid.

133.    First, under such an interpretation, claim 1 is invalid for lacking written description and enablement under 35 U.S.C. § 112(a).  The '147 patent does not disclose a one-piece insert as an embodiment of the invention.  To the contrary, the '147 patent specification expressly criticizes

and distinguishes such as a structure because it requires a "break off" that is "complicated and expensive" and is a problem to be solved. Accordingly, under any such interpretation, claim 1 is invalid for lacking written description and enablement under 35 U.S.C. 112(a).

134. The remaining claims in the '147 patent are dependent from claim 1, and also are invalid under such an interpretation for lacking written description and enablement to the extent they are asserted to encompass one-piece designs.

135. Additionally, under such an interpretation, claim 1 of the '147 patent is invalid based upon prior disclosures and the knowledge of a person of ordinary skill in the art. The '147 claims priority to Provisional Application No. 61/929,746 filed January 21, 2014.

136. First, according to the rationale evident from EIS's infringement accusations, the "insert" recited in claim 1 was already disclosed in the prior art.

137. For example, Figure 1 of Great Britain patent GB 1,294,067 titled "Anchor," issued October 25, 1972 ("GB '067") discloses a one piece insert that is designed so as to be frangible during installation (Ex. 14.) In the parties' European Opposition proceeding, EIS has referred to the arrangement in GB '067 as having a "sleeve" and "core" – the same terminology recited in claim 1 of the '147 patent.



138.    Referring to Figure 5 of GB '067, the patent specification explains that "[t]he embodiment of Figure 5 differs from that of Figure 1 only in the provision of a closure wall 50 at the wider end of the base 10. The closure wall 50 serves to seal the anchor and make the fitting watertight."  Accordingly, GB '067 discloses a sealing insert



139.    In the European Opposition proceeding, EIS expressly distinguished its invention from the "one-piece" insert described and depicted in GB '067, but if the "insert" recited in the '147 patent claims was construed such that they would cover Baier's one-piece KL-Plug, as EIS alleges in correspondence and in EIS's Amended Complaint, then such an "insert" was already known in the art and disclosed, for example, in GB '067.

140.    European Patent EP 0080558, titled "Threaded Insert" and issued August 11, 1982 ("EP '558"), provides another example of a threaded one-piece insert in which a frangible seam is broken during installation.  (Ex. 15.)  The external profile of the bottom portion of the insert in EP '558 (shown below on the left) is similar to that in the accused KL-Plug (shown below on the right), illustrating that such insert designs  were known in the art well before the '147 patent.



(EP '558, Figure 1; https://www.baier-michels.com/products/closing-and-sealing-systems/bm-kl-plug/.)

141.    Second, according to the apparent interpretation used in EIS's infringement accusations, the "installation device" recited in claim 1 also was known in the prior art.

142.    In EIS's Amended Complaint, EIS relies on a photo from a trade show for its assertion that Baier used an installation tool having the components recited in claim 1 of the '182 patent.  But the tool in the photo is a blind rivet nut setting tool that was designed well before the '182 patent.  Indeed, Figure 1 of U.S. Patent No. 5,605,070 titled "Blind Rivet Nut Setting Device," issued February 25, 1997 (the '070 patent), corresponds to the tool in the photo.  (Ex. 16.)



143.    EIS's allegations in its Amended Complaint ignored the claimed requirement that the tool uses axial pressure to cause a pull rod to screw into a work piece.  But this feature was also well known and was disclosed, for example, in International Patent Application (under the Patent Cooperation Treaty) Number PCT/IB98/01148, titled "Pneumatic-Hydraulic Rivet Gun" and published as Publication Number WO 99/04917 on February 4, 1999 ("WO '917").  (Ex. 17.) WO '917 discloses all components of the installation device recited in claim 1, including "a switch coupled to a rotation drive and said pull-rod coupler such that axial pressure on said pull-rod activates said switch."

144.    At the time of the alleged invention in the '147 patent, it would have been obvious to a person of ordinary skill in the art to utilize installation tools having features such as those disclosed in the '070 patent and WO '917, taken alone or in combination, for installing an insert configured as disclosed in GB '067 and EP '558, taken alone or in combination, because the axial rotation of the threaded drive and spindle in engagement with the internally threaded part of the pull rod would provide appropriate force to break apart the insert for installation.

145.    Accordingly, under the apparent interpretation that EIS employed to accuse Baier of infringement, claim 1 of the '147 patent would be invalid as obvious pursuant to 35 U.S.C. § 103.

146. The remaining claims in the '147 patent are dependent from claim 1, and also would be invalid as being obvious for substantially the same reasons as for claim 1 and to the extent they are asserted to encompass one-piece designs.

## PRAYER FOR RELIEF

WHEREFORE, Baier prays for the following relief:

(1)    A judgment declaring that the Asserted Patents are not and would not be infringed by Baier;

(2)    A judgment declaring that the Asserted Patents are invalid;

(3)    A judgment awarding Baier its reasonable attorneys' fees, costs (including expert fees), disbursements, and reasonable attorneys' fees in this action, pursuant to 35 U.S.C. § 285 thereon; and

(4)    Such further relief as the Court deems just and proper.


Dated: January 16, 2025

Respectfully submitted,

*/s/ Beattie B. Ashmore*
Beattie B. Ashmore
Fed. Bar No. 5215
**Beattie B. Ashmore, P.A.**
650 E. Washington Street
Greenville, SC 29601
P: 864-467-1001
F: 864-672-1406
beattie@beattieashmore.com

*Attorney for Plaintiffs baier & michels GmbH & Co. KG and baier & michels USA Inc.*

*Of Counsel: Admitted Pro Hac*
Calvin P. Griffith
**JONES DAY**
North Point

901 Lakeside Avenue
Cleveland, Ohio 44114
P: 216-586-7050
cpgriffith@jonesday.com

Michael A. Oblon
**JONES DAY**
51 Louisiana Avenue, NW
Washington, DC 20002
P: 202-879-3815
moblon@jonesday.com